Filed 6/10/24  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALVARO LOPEZ REYES,<br><br>    Defendant and Appellant.</td><td>H050786<br>(Santa Clara County<br>Super. Ct. No. C2114092)</td></tr>
</table>

Defendant Alvaro Lopez Reyes appeals protective orders imposed after he pleaded no contest to sex offenses under sections 288, subdivision (a) and 288, subdivision (c)(1), of the Penal Code.  (Subsequent undesignated statutory references are to the Penal Code.)  Reyes argues that the protective orders are not supported by good cause and are unconstitutionally vague and overbroad.  As explained below, we find no error in the orders and affirm the judgment.

## I. BACKGROUND

Because Reyes pleaded no contest, the facts below are drawn from the probation report.

From 2006 to 2010, Reyes molested his eldest daughter on multiple occasions by touching her breasts against her will, starting when she was 13 years old.  These events were so traumatic that on at least one occasion the daughter wet her bed.  In June 2021,

concerned that Reyes' two still juvenile daughters might be at risk, the eldest daughter reported Reyes' abuse to the police. Similarly concerned for Reyes' juvenile daughters, in September 2021 the daughter of a family friend reported that between 1991 and 1993, while she was between 5 and 7 years old, Reyes molested her by exposing his penis to her and asking her to kiss it.

In November 2021, in connection with his daughter's allegations, Lopez Reyes was arraigned on one count for a lewd act with a child under 14 in violation of section 288, subdivision (a) and five counts for lewd acts with a child of 14 in violation of section 288, subdivision (c)(1). In December 2021, in connection with the allegations of the other victim, Reyes was arraigned in a separate case on an additional charge of a lewd act with a child under 13 in violation of section 288, subdivision (a). These two cases were later consolidated, and the prosecution added an enhancement allegation under section 667.61, subdivision (j)(2) for abusing more than one child.

In November 2022, pursuant to a plea agreement, Reyes pleaded no contest to two counts of violating section 288, subdivision (a) and three counts of violating section 288, subdivision (c)(1). The prosecutor in turn agreed to dismiss the remaining two counts as well as the enhancement allegation, which carried with it a sentence of 25 years to life. (§ 667.61, subd. (j)(2).) The parties also stipulated to a sentence of 12 years in state prison. In addition, during the plea hearing, the prosecutor stated that she would be requesting a protective order at sentencing.

The probation department filed a sentencing report which, among other things, recommended issuance of a protective order pursuant to section 136.2. At sentencing, both victims made statements detailing the trauma that they experienced as children and continued to experience as adults. Reyes chose not to make a statement, objecting to only one issue in the probation report related to a fine.

Pursuant to the plea agreement, the trial court sentenced Reyes to 12 years in state prison on the five counts of conviction and dismissed the remaining counts as well as the

enhancement.  The court also granted 10-year criminal protective orders as to both victims.  In particular, the court prohibited Reyes from contacting either victim except through his attorney of record and allowed the victims to record any prohibited communication:  "Under the terms of these orders, you must have no personal, electronic, telephonic, social media, written contact, any sort of contact with either protected party, no contact through a third party, except the attorney of record, you must not come within 300 yards of either protected party, and the protected person may record any prohibited communication."  Reyes did not object to the protective orders.

Reyes filed a timely notice of appeal.

## II.  DISCUSSION

Reyes challenges the protective orders on the grounds that they lacked good cause and that they are unconstitutionally vague and overbroad.  We address each challenge in turn.

### A.    Good Cause

When a criminal defendant is convicted of a crime that requires registration as a sex offender, the Penal Code states that the sentencing court "shall consider" issuing an order restraining the defendant from any contact with a victim, for up to 10 years, with the length based on the seriousness of the offense, the probability of future violations, and the safety of the victim and the victim's family.  (§ 136.2, subd. (i)(1).)  Reyes argues there was not good cause for either the issuance or the length of the protective orders.  However, because Reyes did not object to the orders when the court issued them, this argument has been forfeited.

#### 1.    Forfeiture

As a general rule, an appellant forfeits arguments regarding errors to which "an objection could have been, but was not, presented to the lower court by some appropriate method . . . ."  (*People v. Saunders* (1993) 5 Cal.4th 580, 590.)  " ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court," ' " because

3

" '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593.) This rule bars Reyes' good cause argument.

When Reyes pleaded no contest, the prosecutor stated on the record that she was going to be requesting protective orders at sentencing. Consequently, Reyes had more than adequate advance notice that the orders would be requested and an opportunity to contest them. However, as Reyes concedes, he did not object to issuance of the protective orders or their duration at sentencing. Accordingly, as Reyes also concedes, he forfeited any challenge to the court's exercise of sentencing discretion in issuing the protective orders. (See *People v. Scott* (1994) 9 Cal.4th 331, 351.)

### 2. Ineffective Assistance

Unable to challenge the justification for the protective orders directly, Reyes attempts to do so indirectly by asserting that his counsel provided ineffective assistance of counsel by not challenging the protective orders. This argument is unavailing.

Criminal defendants have a right under both the California Constitution and the United States Constitution to effective assistance of counsel. (See, e.g., *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) To prevail on a claim of ineffective assistance, a defendant "must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to [the] defendant . . . ." (*People v. Kipp* (1998) 18 Cal.4th 349, 366, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*).) To establish deficient performance, a defendant must show that " 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' " (*Ledesma*, *supra*, 43 Cal.3d at p. 216.) In addition, to avoid the distorting influence of hindsight and the adverse impact of second-guessing counsel's decisions, "[i]n determining whether counsel's performance was deficient, a

4

court must in general exercise deferential scrutiny." (*Ibid*.) Consequently, there is a " 'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.' " (*People v. Lucas* (1995) 12 Cal.4th 415, 437.) Because deciding whether to object is inherently tactical, this presumption is rarely overcome with respect to a failure to object. (See, e.g., *People v. Maury* (2003) 30 Cal.4th 342, 419.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) If the record does not show why counsel chose to act or not to act, challenges to counsel's conduct fail " ' "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) Consequently, courts generally "will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.) Ineffective assistance claims are therefore generally brought in habeas corpus proceedings where evidence concerning trial counsel's actions can be presented. (*Mai*, *supra*, 57 Cal.4th at p. 1009.)

Reyes has not overcome the burden that he faces in challenging the tactical decisions of his trial counsel on direct appeal. Because counsel was not asked to explain his actions, the record does not shed any light on why trial counsel did not object to the protective orders. Even more important, the record does not show that counsel had no conceivable reason for not objecting to the protective orders. (*Mai, supra*, 57 Cal.4th at p. 1009.) To the contrary, there are at least three possible reasons.

First, Reyes's counsel may have believed Reyes was not harmed by the orders and did not oppose them. (See *Strickland*, *supra*, 466 U.S. at p. 691 ["The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly . . . on information supplied by the defendant."].) As Reyes was sentenced to 12 years in prison, and the protective orders last for only 10 years, trial counsel may not have believed that

5

the protective orders would have any practical impact on Reyes. In addition, at the sentencing hearing trial counsel stated without objection from Reyes that there was only one issue with the probation report, related to a fine. As the probation report recommended that protective orders be imposed, had Reyes opposed those orders as well as the fines, he would have been expected to object to them.

Second, trial counsel may have believed that the agreement to drop the sentencing enhancement subjecting Reyes to a sentence of 25 years to life in exchange for a sentence of 12 years, was an extremely favorable disposition and that it would be unwise to endanger the deal by disputing the protective orders. (See *People v. Kendrick* (2014) 226 Cal.App.4th 769, 779.)

Third, trial counsel may have concluded that objecting to the protective orders would be futile. (*People v. Price* (1991) 1 Cal.4th 324, 387, superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile."].) The Penal Code requires courts to consider protective orders in child sexual abuse cases such as this one (§ 136.2, subd. (i)(1)), and both victims testified at sentencing about the trauma they suffered, its crippling impact on them, and Reyes's lack of remorse. In light of this evidence, Reyes' trial counsel reasonably could have concluded that objecting to the protective orders would be futile.

As Reyes has not established his counsel acted in a deficient manner, we need not address prejudice. (*Strickland*, *supra*, 466 U.S. at p. 679.)

*B.     Constitutionality*

Reyes challenges the constitutionality of the protective orders on both overbreadth and vagueness grounds. Although Reyes did not raise these challenges at sentencing, to the extent that they raise "pure question[s] of law" we have discretion to consider them for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-888 (*Sheena*

6

*K*.).) Exercising that discretion, we conclude that the protective orders are neither overbroad nor vague.

### 1. Overbreadth

By prohibiting Reyes from contacting the protected parties, the protective orders restrict his constitutional right of association. (*People v. Jungers* (2005) 127 Cal.App.4th 698, 703.) However, the government has a legitimate interest in protecting victims of crimes. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1349.) Accordingly, conditions on sentencing may be imposed to protect crime victims so long as the conditions are not overbroad, that is, they are closely tailored to accomplishing the purpose of the condition. (See *Sheena K*, *supra*, 40 Cal.4th at p. 890; see also *In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 ["perfection in such matters is impossible, and that practical necessity will justify some infringement"].) The protective orders restrict Reyes from having contact with only two people—his two victims—and thus are closely tailored to the purpose of protecting them from further harm. To the extent that Reyes also argues that the length of the orders was unreasonable, his argument is factual in nature, and we decline to address it. We note, however, that the orders are limited to a period of 10 years, which is authorized under the statute and closely tailored to the state's objective of protecting the victims, whose statements at sentencing showed that they are still suffering from the trauma that they experienced. Additionally, should Reyes or the victims want to change the terms of the protective orders, they can seek modification in the trial court, thus providing flexibility should the orders become unnecessary. (§ 136.2, subd. (i)(1) ["The order may be modified by the sentencing court in the county in which it was issued throughout the duration of the order.].)

### 2. Vagueness

Reyes also argues that the protective orders are unconstitutionally vague because it is unclear whether the orders would be violated if the victims contacted him. The

Attorney General responds that the orders would not be violated by "the mere 'receipt' of . . . communication[] until he actively engaged with it . . . ." We agree.

The vagueness doctrine "bars the government from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' " (*People v. Hall* (2017) 2 Cal.5th 494, 500.) Accordingly, to avoid a challenge under vagueness doctrine, an order must be sufficiently precise for the subject to know what is required of him, and for the court to determine whether the condition has been violated." (*Sheena K., supra*, 40 Cal.4th at p. 890.)

The protective orders here clearly prohibit Reyes from contacting either of his victims. The trial court stated that "you must have no personal . . . contact with either protected party" and "you must not come within 300 yards of either protected party . . . ." This language clearly instructs Reyes that he cannot contact or go near the victims. The protective orders also clearly indicate that the protected parties are the "2 VIC[TIMS]," and that the orders last until January 2033. Thus, Reyes is not left to guess how his actions are restricted in a way that would "chill" his legally protected activities. (See *City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1202 [" 'a vague law may have a chilling effect, causing people to steer a wider course than necessary in order to avoid the strictures of the law' "].)

Reyes contends that he could unknowingly or unintentionally violate the orders by innocently receiving written contact from one of the victims. We disagree. The protective orders are focused on Reyes' actions. The trial court told Reyes that "*you*" must have no personal contact with the protected parties" and "*you*" must not come within 300 years of those parties. (Italics added.) In addition, while the orders prohibit contact with the victims, the focus of the orders are plainly on contact initiated by Reyes. For example, they allow contact through "the attorney of record"—that is, Reyes's counsel, not attorneys whom the victims might retain and who would not be of record in

8

this case.  In addition, the orders authorize the victims "to record any prohibited communication," which, as only Reyes is bound by the protective orders (see § 136.2, subd. (i)(1) [authorizing orders "restraining the defendant from any contact with a victim"], appears to assume that the referenced communications would come from Reyes.

Citing *People v. Jungers, supra*, 127 Cal.App.4th 698, Reyes argues that he should have been prohibited from "initiating contact" rather than just having contact with the victims.  In *Jungers*, however, the protected party was the defendant's wife, who informed the court that she wanted to have contact with defendant, and the court decided to allow contact that was acceptable to and welcomed by the wife.  (*Id.* at pp. 701, 705.) There was no evidence here that either of Reyes' victims wanted to have contact with him and therefore no need to phrase the protective orders here in that way.  Moreover, even if it would have been better to word the protective orders in a different way, the orders, as phrased, are not vague (or overbroad) and therefore are constitutional.

### III.  DISPOSITION

The judgment is affirmed.

_____
BROMBERG, J.

WE CONCUR:

_____
GROVER, ACTING P.J.

_____
LIE, J.

*People v. Reyes*
H050786